UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RHONDA AMBRISTER, individually and as Legal Guardian of R.D., a minor,<br><br>                                        Plaintiff,<br><br>                    -against-<br><br>CHANCELLOR DAVID C. BANKS, in his official capacity as Chancellor of the New York City Department of Education & THE NEW YORK CITY DEPARTMENT OF EDUCATION,<br><br>                                        Defendants. | 24-CV-8403 (JGLC)<br><br>**<u>OPINION AND ORDER</u>** |

JESSICA G. L. CLARKE, United States District Judge:

Plaintiff Rhonda Ambrister, the legal guardian of a student with a disability, brings this case against the New York City Department of Education and its Chancellor, David C. Banks (together "DOE" or the "District"), pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400, *et seq.* and Article 89 of the New York State Education Law, N.Y. Educ. Law § 4401, *et seq.* Plaintiff seeks tuition reimbursement for her unilateral placement of the student in a private school for the May 10, 2021 – September 13, 2021 period. Plaintiff seeks reversal of an adverse decision by a State Review Officer ("SRO") in the administrative proceedings below. For the reasons stated herein, the Court grants in part and denies in part Defendants' Motion for Summary Judgment, and similarly, grants in part and denies in part Plaintiff's Motion for Summary Judgment.

**BACKGROUND**

**I.    IDEA Statutory Framework**

Under IDEA, states receiving federal special education funding are required to provide a free appropriate public education ("FAPE") to children with disabilities. 20 U.S.C. § 1400(d)(1)(A); *see also T.M. ex rel. A.M. v. Cornwall Cent. Sch. Dist.*, 752 F.3d 145, 151 (2d Cir. 2014). "To provide a FAPE to each student with a disability, a school district must develop an [individualized education program ('IEP')] that is 'reasonably calculated to enable the child to receive educational benefits.'" *Ventura de Paulino v. N.Y.C. Dep't of Educ.*, 959 F.3d 519, 525 (2d Cir. 2020) (quoting *T.M. ex rel. A.M.*, 752 F.3d at 151).

"The IDEA also requires states to provide an administrative procedure for parents to challenge the adequacy of their children's IEPs." *Mendez v. Banks*, 65 F.4th 56, 59 (2d Cir. 2023) (citing 20 U.S.C. § 1415(b)(6)). New York has implemented a two-tier system of administrative review. N.Y. Educ. Law § 4404; *see also Ventura de Paulino*, 959 F.3d at 526. In the first tier, a parent can file an administrative due process complaint ("DPC") challenging the IEP and requesting a hearing before an impartial hearing officer ("IHO"). *Ventura de Paulino*, 959 F.3d at 526. In the second tier, parties aggrieved by the IHOs can appeal their decision to an SRO. *Id.*; *see also R.E. v. N.Y.C. Dep't of Educ.*, 694 F.3d 167, 175 (2d Cir. 2012). "Once the state review officer makes a final decision, the aggrieved party may seek judicial review of that decision in a state or federal trial court." *Ventura de Paulino*, 959 F.3d at 526; *see* 20 U.S.C. § 1415(i)(2)(A).

Any parents who are dissatisfied with their student's IEP may also unilaterally place their student in a private school during the pendency of review proceedings and then seek tuition reimbursement from their school district, but they "do so at their own financial risk." *Florence Cnty. Sch. Dist. Four v. Carter ex rel. Carter,* 510 U.S. 7, 15 (1993) (citation omitted); *see* 20

U.S.C. § 1412(a)(10)(C). Section 1415(j) of the IDEA, also known as the "stay-put" or "pendency" provision, provides that "while the administrative and judicial proceedings are pending and unless the school district and the parents agree otherwise, a child must remain, at public expense, in his or her then-current educational placement." *Ventura de Paulino*, 959 F.3d at 526 (internal citation and quotation marks omitted); *see* 20 U.S.C. § 1415(i)(2)(A). "The purpose of this provision is 'to maintain the [child's] educational status quo while the parties' dispute is being resolved.'" *Abrams v. Porter*, No. 20-3899-CV, 2021 WL 5829762, at *1 (2d Cir. Dec. 9, 2021) (quoting *T.M. ex rel. A.M.*, 752 F.3d at 152). "[A] school district is required to continue funding whatever educational placement was last agreed upon for the child until the relevant administrative and judicial proceedings are complete." *Doe v. E. Lyme Bd. of Educ.*, 962 F.3d 649, 659 (2d Cir. 2020) (internal quotation marks omitted).

## II.    Factual Background

"Upon request of the parties, the Court waived the requirement to submit Local Rule 56.1 statements, *see* ECF No. [15], which is a common practice in IDEA cases that are based on an undisputed administrative record." *See, e.g., A.H. v. N.Y.C. Dep't of Educ.*, No. 24-CV-4828 (JGLC), 2025 WL 2773252, at *2 (S.D.N.Y. Sept. 29, 2025). Because "many of the relevant facts are not disputed here[, t]he below recitation of facts therefore is largely drawn from the SRO and IHO decisions." *Id.* "Citations to a party's memorandum or either of the administrative decisions shall be deemed to incorporate by reference the documents cited therein." *Id.* "Still, the Court has conducted an independent review of the record underlying the parties' submissions and the administrative decisions as required, and will cite to the administrative record directly where applicable." *Id.*

### A. Statement of Facts

Plaintiff Rhonda Ambrister is the legal guardian of R.D. (the "Student").[1] ECF No. 17 ("AR") at 42. R.D. suffers from a brain injury, and has been medically diagnosed with cerebral palsy and a severe seizure disorder. *Id.* In December 2019, R.D., then thirteen years old, and her guardians relocated to New York City. *Id.* at 588. From March 2020 to April 2021, Plaintiff and R.D. returned to and lived in the Bahamas. *Id.* at 15, 588.

On January 3, 2020, DOE's Committee on Special Education ("CSE") developed a Comparable Service Plan ("CSP") for R.D. until an IEP could be developed. AR at 309, 798–800. In February 2020, Plaintiff sent a Ten-Day Notice ("TDN") to DOE and unilaterally enrolled R.D. at the International Institute for Brain ("iBRAIN") for the remainder of the 2019-2020 school year. *Id.* at 309, 367–73. On March 24, 2020, Plaintiff filed an administrative due process complaint ("DPC"), assigned IHO Case No. 193417, alleging that DOE failed to offer R.D. a FAPE for the 2019-2020 school year. *Id.* at 38.

On June 9, 2020, DOE's Committee on Special Education ("CSE") convened and developed an IEP for R.D. for the 2020-2021 school year. AR at 15. The June 2020 IEP

---

[1] As was the case in related actions, this proceeding

> was originally commenced by [Rhonda Ambrister] and her husband as legal guardians of the child, but petitioner's counsel advised this Court . . . that petitioner's husband recently died. Ordinarily, the death of a party results in a stay of the proceedings and requires substitution of a proper legal representative. Where, however, a party's death does not affect the merits of a case, there is no need for strict adherence to the requirement that the proceedings be stayed pending substitution. Under these circumstances, we discern no need to stay the proceedings in order to render a determination.

*Ambrister on Behalf of R.D. v. Rosa*, 200 N.Y.S.3d 549, 550 n.1 (3d Dep't 2024) (citation modified); *see also Ambrister v. N.Y.C. Dep't of Educ.*, No. 22-CV-5516 (JGLC), 2024 WL 3888743, at *2 n.1 (S.D.N.Y. Aug. 20, 2024).

recommended a 6:1+1 class size,[2] occupational therapy, physical therapy, speech-language therapy, and parent counseling and training recommendations. *Id.* at 337–66. On July 6, 2020, Plaintiff filed a DPC, assigned IHO Case No. 196227, alleging that DOE denied R.D. a FAPE for the 2020-2021 school year, and that iBRAIN was an appropriate unilateral placement for R.D. *Id.* at 16–17. This July 2020 DPC was consolidated with Plaintiff's previous DPC, filed in March 2020. *Id.* at 16.

On January 4, 2021, DOE emailed Plaintiff a Prior Written Notice stating that DOE had determined that R.D. was not eligible or entitled to attend DOE schools, because she was not a resident of New York City as of March 26, 2020. AR at 15. Plaintiff appealed this residency determination to the Commission, which issued a stay order on May 10, 2021, directing DOE to treat R.D. as a resident until the appeal of the residency determination was decided. *Id.* at 1221. On September 13, 2021, the Commission dismissed Plaintiff's appeal as untimely. *Id.* at 1223.

On May 1, 2021, R.D. began in-person instruction at iBRAIN. *Id.* at 15. At iBRAIN, R.D. was initially placed in an 8:1+1 classroom, but was moved to a 6:1:1 class, because R.D. became "more dysregulated" in the classroom with the larger class size. *Id.* at 32.

On May 27, 2021, DOE convened a CSE to develop an IEP for R.D. for the 2021-2022 school year. AR at 16. This May 2021 IEP recommended a 12:1+(3:1) class size for R.D. *Id.* at 27. Plaintiff contended that R.D. required a 6:1:+:1 class size and that the recommended 12:1+(3:1) class size was inappropriate. *Id.* Accordingly, Plaintiff notified DOE, by a TDN dated June 23, 2021, that Plaintiff disagreed with this IEP and instead intended to re-enroll R.D. at iBRAIN for the 2021-2022 school year. *Id.* at 16. On July 7, 2021, Plaintiff filed a DPC, IHO

---

[2] The class size ratios are expressed as "[student]:[teacher]:[staff] or [student]:[teacher]+([student]:[staff])." *Cruz v. Banks*, No. 1, 2026 WL 436354, at *2 (N.Y. Feb. 17, 2026).

Case No. 210820, alleging that that DOE denied R.D. a FAPE for the 2021-2021 school year, and that iBRAIN was an appropriate unilateral placement for R.D. *Id.*

On November 5, 2021, IHO James A. Brown decided Plaintiff's consolidated DPC regarding school years 2019-2020 and 2020-2021 in a Findings of Fact and Decision ("FOFD"). AR at 1223. IHO Brown found that the January 3, 2020 CSP failed to provide R.D. with a FAPE, because of a "clearly inadequate" ratio of students to teachers and paraprofessionals. *Id.* IHO Brown also found that R.D. was appropriately placed at iBRAIN from February 25, 2020 to March 20, 2020, and that the equities favored Plaintiff over the District. *Id.* Plaintiff appealed IHO Brown's decision under SRO Appeal No. 21-247. *Id.* at 1224–25.

On November 10, 2021, IHO Jennifer Mazzei dismissed Plaintiff's DPC regarding the 2021-2022 school year. AR at 1224. Plaintiff appealed IHO Mazzei's decision under SRO Appeal No. 21-248. *Id.* at 1225.

On February 28, 2022, SRO Krolak issued a joint decision on SRO Nos. 21-247 and 21-248. AR at 1215-34. SRO Krolak dismissed Plaintiff's appeal in SRO No. 21-247, regarding the 2019-2020 and 2020-2021 school years. *Id.* at 1234. However, SRO Krolak sustained in part and remanded in part Plaintiff's appeal in SRO No. 21-248 with regards to the 2021-2022 school year. *Id.* at 1233–34. SRO Krolak found that that IHO Mazzei erred in dismissing Plaintiff's claims in their entirety, and the DOE was required to provide R.D. a FAPE from May 10, 2021 to September 13, 2021.[3] *Id.* at 1233. SRO Krolak remanded to the matter to the IHO to determine whether Defendants offered the student a FAPE for the period of May 10, 2021 – September 13, 2021. *Id.* at 1234.

---

[3] SRO Krolak found that R.D. "was entitled to attend the schools of the district as a resident student . . . from May 10, 2021 (the date of the stay order) through September 13, 2021 (the date of the Commissioner of Education's decision dismissing the parents' petition)." AR at 1230–31.

On February 11, 2022, DOE convened a CSE and produced R.D.'s 2022 IEP. *Ambrister v. Banks*, No. 23-CV-2746 (JGLC) (BCM), 2024 WL 4451412, at *4 (S.D.N.Y. Aug. 9, 2024), *report and recommendation adopted in part, rejected in part,* No. 23-CV-2746 (JGLC) (BCM), 2024 WL 4326933 (S.D.N.Y. Sept. 27, 2024), *aff'd,* No. 24-2852-CV, 2025 WL 2775936 (2d Cir. Sept. 30, 2025).

On April 24, 2024, following SRO Krolak's February 28, 2022 remand, IHO Mazzei issued a FOFD finding that DOE offered R.D. a FAPE between May 10, 2021 and June 10, 2021, but failed to do so between June 11, 2021 and September 13, 2021. AR at 36–71. The IHO determined that the June 9, 2020 IEP was the operative IEP for the period of May 10, 2021 through June 10, 2021, and that the June 2020 IEP offered R.D. a FAPE. *Id.* at 48–55. As relevant to the dispute in this case, IHO Mazzei determined that the CSE did not deny R.D. access to assistive technology devices. *Id.* at 54–55.

However, IHO Mazzei determined that the May 27, 2021 IEP denied R.D. a FAPE because it failed to mandate an appropriate class size. AR at 55–59. In particular, IHO Mazzei determined that the 12:1+(3:1) class size recommendation was "drastically different" than a 6:1+1 class size and unsupported by the record. *Id.* In concluding that the larger class size was inappropriate, IHO Mazzei cited R.D.'s prior unsuccessful trial period in an 8:1:1 classroom at iBRAIN, R.D.'s lack of progress during the preceding year, and testimony that the larger class size would be detrimental to R.D. *Id.* at 56–59. The IHO further determined that the District failed to present evidence supporting its assertion that R.D. was at risk of elopement, which was one of the bases for its recommendation of the larger class size. *Id.* at 57. Accordingly, IHO Mazzei ordered DOE to fund R.D.'s tuition at iBRAIN from June 11, 2021 to September 13,

2021, finding that R.D. was appropriately placed at iBRAIN and that the equities favored Plaintiff over the District. *Id.* at 69–70. Both parties appealed. *Id.* at 17.

On July 3, 2024, SRO Krolak issued SRO Decision No. 24-215, regarding the May 10, 2021 – September 13, 2021 period. AR at 13–35. SRO Krolak sustained the DOE's appeal and dismissed Plaintiff's cross-appeal. *Id.* at 35. Specifically, SRO Krolak found that the District offered R.D. a FAPE for the entire period at issue. *Id.* at 19–35. SRO Krolak concluded that the June 2020 IEP did not deny R.D. access to assistive technology devices and services. *Id.* at 24–27. SRO Krolak further concluded that the May 2021 IEP's recommended placement of a 12:1+(3:1) special class was appropriately tailored to R.D.'s needs. *Id.* at 30–34. In particular, SRO Krolak relied on the District's school psychologist's testimony that R.D.'s risk of elopement, "numerous seizures," and "transition of coming back into the [D]istrict" as justifying the larger class size. *Id.* at 33–34. Having concluded that the DOE offered a FAPE, SRO Krolak did not determine whether iBRAIN was an appropriate placement or whether the equities favored the parent. *Id.* at 34.

## B. Prior Federal Actions

Although this action arises from Plaintiff's appeal of an SRO determination that the DOE offered R.D. a FAPE for the period of May 10, 2021, through September 13, 2021, R.D. has also been the subject of prior administrative and judicial appeals under IDEA, with regard to the periods of December 2019 through May 10, 2021, and September 13, 2021 through the end of the 2021-2022 school year. AR at 15–16.

On June 28, 2022, Plaintiff filed an action before this Court, seeking reversal of SRO Decisions 21-247 and 21-248 concerning the 2019–2020, 2020–2021, and 2021–2022 school years. Complaint, *Ambrister v. N.Y.C. Dep't. of Educ.*, No. 22-CV-5516 (JGLC) (S.D.N.Y. June

8

28, 2022). On August 20, 2024, the Court granted the DOE's motion for summary judgment on the issue of exhaustion of administrative remedies, concluding that Plaintiff did not exhaust administrative remedies with respect to the time period from May 10, 2021 to September 13, 2021 *before* filing that action. *Ambrister v. N.Y.C. Dep't of Educ.*, No. 22-CV-5516 (JGLC), 2024 WL 3888743, at *8 (S.D.N.Y. Aug. 20, 2024). The Court explained that "the issue of whether DOE provided R.D. a FAPE during this time period was remanded by the 2022 SRO decision on appeal here and then subsequently adjudicated in 2024 IHO and SRO decisions that [were] not on appeal" in that action. *Id.* Therefore, in that previous action, the Court only considered whether Plaintiff was entitled to retroactive reimbursement for the placement at iBRAIN from February 25, 2020 to March 25, 2020. *Id.* at *8–*10. The Court concluded that Plaintiff was entitled to retroactive tuition reimbursement for the period from February 25, 2020 to March 25, 2020. *Id.* at 10.

Similarly, on March 31, 2023, Plaintiff filed a complaint against Defendants Banks and DOE, alleging that the 2022 IEP was procedurally and substantively defective. Complaint, *Ambrister v. Banks*, No. 23-CV-2746 (JGLC) (BCM) (S.D.N.Y. Mar. 31, 2023). Plaintiff sought reversal of SRO Decision No. 22-136 concerning the 2021-2022 and 2022-2023 school years. *Id.* On September 27, 2024, this Court adopted a Report and Recommendation by Magistrate Judge Moses granting summary judgment for Defendants, because the 2022 IEP was procedurally and substantively adequate under IDEA. *Ambrister v. Banks*, No. 23-CV-2746 (JGLC) (BCM), 2024 WL 4326933, at *5 (S.D.N.Y. Sept. 27, 2024). The Second Circuit affirmed this decision. *Ambrister v. Banks*, No. 24-2852-CV, 2025 WL 2775936 (2d Cir. Sept. 30, 2025).

### III.     Procedural History

On November 4, 2024, Plaintiff initiated the present action, which is an appeal of SRO Krolak's SRO Decision No. 24-215. ECF No. 1 ¶ 90. Plaintiff alleges that SRO Krolak erred when (1) he reversed IHO Mazzei's determination regarding class size for the June 11, 2021 through September 13, 2021 period, and (2) upheld IHO Mazzei's finding that DOE did not deprive R.D. of a FAPE between May 10, 2021 and June 10, 2021. *Id.* ¶ 97. Plaintiff seeks funding for tuition and related services and reasonable attorneys' fees for the entire period of May 10, 2021 – September 13, 2021. *Id.* ¶¶ 101, 103, 107.

On June 4, 2025, the parties filed the Administrative Record under seal. ECF No. 17. On the same day, Defendants filed a Motion for Summary Judgment, requesting the Court to defer to SRO Krolak's decision in its entirety. ECF No. 18. On July 2, 2025, Plaintiff moved for summary judgment finding that Defendants denied R.D. a FAPE from May 10, 2021 through September 13, 2021. ECF No. 23.[4] First, Plaintiff argues that the June 2020 IEP failed to provide a FAPE from May 10, 2021 – June 10, 2021, because it failed to provide for assistive technology and services. ECF No. 23-1 at 13–19. Second, Plaintiff argues that the May 2021 IEP failed to provide a FAPE from June 11, 2021 – September 13, 2021, because it provided a 12:1+(3+1) class size, rather than a 6:1+1 class size. *Id.* at 19–23. On July 30, 2025, Defendants filed their reply memorandum of law. ECF No. 26. On August 16, 2025, Plaintiff filed her reply memorandum of law. ECF No. 29.

---

[4] Plaintiff's Notice of her Motion for Summary Judgment appears to erroneously request tuition funding at iBRAIN for the 2024–2025 school year, which is not an issue that has been briefed and does not appear to be relevant to this action. ECF No. 23 at 1.

**LEGAL STANDARD**

"In a district court proceeding under the IDEA, the parties and the court typically style the decision as a ruling on a motion for summary judgment, but 'the procedure is in substance an appeal from an administrative determination, not a summary judgment motion.'" *Bd. of Educ. of Yorktown Cent. Sch. Dist. v. C.S.*, 990 F.3d 152, 165 (2d Cir. 2021) (quoting *M.H. v. N.Y.C. Dep't of Educ.*, 685 F.3d 217, 226 (2d Cir. 2012)). "The district court therefore 'engages in an independent review of the administrative record and makes a determination based on a preponderance of the evidence.'" *Id*. (quoting *M.H.*, 685 F.3d at 240).

In conducting this independent review, the court "must give due weight to the state administrative proceedings, mindful that the judiciary generally lacks the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational policy." *Id*. (quoting *M.H.*, 685 F.3d at 240). Where an IHO and SRO reach conflicting conclusions, the court "must defer to the SRO's decision on matters requiring educational expertise unless it concludes that the decision was inadequately reasoned, in which case a better-reasoned IHO opinion may be considered instead." *R.E. v. N.Y.C. Dep't of Educ.*, 694 F.3d 167, 189 (2d Cir. 2012). "On issues of law, however, such as the proper interpretation of the federal statute and its requirements, courts owe no deference to state hearing officers." *C.S.*, 990 F.3d at 165 (internal citation and quotation marks omitted). "When parents seek to overturn an SRO's decision, they bear the burden of demonstrating that the decision was insufficiently reasoned or supported." *Phillips v. Banks*, No. 23-362-CV, 2024 WL 1208954, at *2 (2d Cir. Mar. 21, 2024) (internal citation omitted).

Deference to an SRO or IHO decision is particularly appropriate when the administrative officer's review has been thorough and careful, and where the district court's decision is to be

11

based solely on the administrative record. *See M.H. v. N.Y.C. Dep't of Educ.*, 685 F.3d 217, 241 (2d Cir. 2012). While the Court "do[es] not simply rubber stamp administrative decisions," *Walczak v. Fla. Union Free Sch. Dist.*, 142 F.3d 119, 129 (2d Cir. 1998), review of the administrative decision "is by no means an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities which they review." *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cnty. v. Rowley*, 458 U.S. 176, 206 (1982).

## DISCUSSION

In accordance with 20 U.S.C. § 1414(d), the DOE, through a CSE, "must produce, in writing, an [IEP] that 'describes the specially designed instruction and services that will enable the child to meet' stated educational objectives and is reasonably calculated to give educational benefits to the child." *M.W. ex rel. S.W. v. N.Y.C. Dep't of Educ.*, 725 F.3d 131, 135 (2d Cir. 2013) (citation omitted). For an IEP to satisfy the IDEA and provide a FAPE, it must be both procedurally and substantively adequate. *See Grim v. Rhinebeck Cent. Sch. Dist.*, 346 F.3d 377, 381 (2d Cir. 2003) (stating that courts review state administrative decisions under the IDEA for (1) whether "the State complied with the procedures set forth in the Act" and (2) whether the IEP developed by the school district is "reasonably calculated to enable the child to receive educational benefits"). "The IEP must be likely to produce progress, not regression, and must afford the student with an opportunity greater than mere trivial advancement . . . [but] [a]t the same time, it need not furnish every special service necessary to maximize each child's potential." *Cruz v. Banks,* 134 F.4th 687, 691 (2d Cir. 2025) (citation modified).

In this case, the Court first grants in part Defendants' motion for summary judgment for the period from May 10, 2021, through June 10, 2021, finding that the DOE offered R.D. a FAPE for that time period, and denying Defendants' motion in all other respects. Next, the Court grants

in part Plaintiff's motion for summary judgment for the period from June 11, 2021, through September 13, 2021, finding that Defendants denied R.D. a FAPE. The Court denies Plaintiff's motion in all other respects.

### A. Plaintiff Is Not Entitled to Retroactive Tuition Reimbursement for the Period from May 10, 2021 to June 10, 2021

On the issue of retroactive reimbursement for R.D.'s placement at iBRAIN from May 10, 2021 to June 10, 2021, IHO Mazzei and SRO Krolak both properly concluded that R.D. is not entitled to tuition reimbursement for this period. Both IHO Mazzei and SRO Krolak determined that the June 9, 2020 IEP provided R.D. a FAPE for that time period. AR at 26–27, 48–55.

The following framework guides the Court's analysis:

> Parents who are dissatisfied with their child's education can unilaterally change their child's placement during the pendency of review proceedings and can, for example, pay for private services, including private schooling. They do so, however, at their own financial risk. They can obtain retroactive reimbursement from the school district *after* the IEP dispute is resolved, if they satisfy a three-part test that has come to be known as the *Burlington-Carter* test. A parent can obtain such reimbursement if: (1) the school district's proposed placement violated the IDEA by, for example, denying a FAPE to the student because the IEP was inadequate; (2) the parents' alternative private placement was appropriate; and (3) equitable considerations favor reimbursement.

*Ventura de Paulino v. N.Y.C. Dep't of Educ.*, 959 F.3d 519, 526–27 (2d Cir. 2020) (internal citations and quotation marks omitted).

Plaintiff argues that the June 2020 IEP denied R.D. a FAPE, solely because it did not recommend assistive technology device or services for R.D. in the "appropriate section of the IEP." ECF No. 23-1 at 13–19 (citing AR at 25). Plaintiff asserts that such devices and services should have been listed in the "recommended special education programs and services" section, under the row designated for "assistive technology devices or services." *Id.* at 14.

Instead, as noted by SRO Krolak and IHO Mazzei, other sections of the June 2020 IEP recommend and make clear that the IEP provides for the use of assistive technology. *See* AR at

13

24–27, 43, 54. Specifically, the annual goals section and management needs section of the June 2020 IEP provides for R.D.'s use of assistive technology devices, including that R.D have "access to a dynamic display screen generating communication tool." AR at 349, 352–53, 355. Additionally, the IEP's special factors section indicated that the student needed assistive technology devices or services. *Id.* at 350. Because of these provisions and clarifying testimony by the District's school psychologist, which confirmed that the IEP provided for various assistive technologies, IHO Mazzei and SRO Krolak rejected Plaintiff's argument that the June 2020 IEP denied access to assistive technology. *Id.* at 26, 54–55.

Here, Plaintiff takes issue with the IHO's and SRO's interpretation of the school psychologist's testimony, and the reliance on her testimony. *See* ECF No. 23-1 at 13–18. First, Plaintiff argues that IHO Mazzei and SRO Krolak "ignored" testimony from the School Psychologist stating that "listing [assistive technology] in the 'management needs' section of the IEP is not a recommendation for [assistive technology] as a related service mandated by the IEP," and that the psychologist "did not know if listing AT in the 'management needs' section was a recommendation for the provision of related services." ECF No. 23-1 at 17 (citing AR at 1451, 1829–30). Additionally, Plaintiff notes that "the Vice President of the proposed DOE school for R.D. testified regarding the procedural effect of an IEP not listing a related-service: if it is not listed as a recommendation in an IEP, it is not implemented." ECF No. 23-1 at 17 (citing AR at 1873).

However, the Court finds that Plaintiff misinterprets the testimony here. A review of the cited testimony shows that on June 24, 2021, the school psychologist testified that the June 2020 IEP's "material management needs" section provided that R.D. have "access to a dynamic display speech generating communication tools," and various assistive technology needs tools,

including a "dynamic display speech generating device," "different laptops," "switches," and "picture cards." AR at 1402, 1418–19. The school psychologist clarified that management needs *are* incorporated into the proposed program for R.D. *Id.* at 1450–54. Additionally, on April 3, 2023, before IHO Mazzei, the school psychologist also testified that items listed in the management needs sections for an IEP are "considered services" and may be considered "related services." *Id.* at 1829–30. Nothing in the school psychologist's cited testimony suggests that because these items were not explicitly listed as a related service, assistive technologies would not be provided to R.D.

Similarly, the Vice President of the proposed DOE school testified that IEPs are "implemented as written." AR at 1873. When asked if a related service would be implemented "if [that] particular related service was not listed in an IEP document," the Vice President answered that a related service "not listed on the IEP" would "not be implemented." *Id.* However, this testimony alone cannot reasonably be interpreted to mean that recommendations listed in the IEP would not be implemented, simply because they were not included in the related services section. Rather, the Vice President's testimony confirms that the June 2020 IEP, which explicitly provides for assistive technologies, would be implemented to give R.D. access to assistive technologies. *See* AR at 349 (listing under "management needs," various assistive technologies, including "access to a dynamic display speech generating communications tool," "access to AAC," "[a]ccess to instructional [l]aptop," and "[a]ccess to various means of communication").

The sole case Plaintiff relies upon to support its assertion that assistive technology recommendations must appear in the related services section of an IEP is inapposite. *See* ECF No. 23-1 at 17–19 (quoting *Piazza v. Fla. Union Free Sch. Dist.*, 777 F. Supp. 2d 669, 683

15

(S.D.N.Y. 2011). In *Piazza*, the court held that the plaintiff's "failure to implement" claims were improperly asserted, because "nowhere" in the relevant IEPs provided for the implementation of the Plaintiff's desired technology programs and the IEP stated that it was "unclear" whether the technologies were even "viable option[s]." *Id.* Therefore, the cited portion of *Piazza* stands only for the proposition that a plaintiff cannot bring a failure to implement claim when the IEP did not expressly require implementation of the desired service. *Id. Piazza* does not stand for, as Plaintiff argues, that a service must be documented in an IEP in the "related-services" section. ECF No. 23-1 at 18; *see id.*

Second, Plaintiff argues that SRO Krolak impermissibly relied on the School Psychologist's retrospective testimony that "the potential communication technologies referenced in the IEP would have been available in the district." ECF No. 23-1 at 18 (citing AR at 26, 1422–25). To be sure, retrospective testimony (after an IEP is created) may not be considered "to materially alter a deficient written IEP by establishing that the student would have received services beyond those listed in the IEP." *Reyes ex rel. R.P. v. N.Y.C. Dep't of Educ.*, 760 F.3d 211, 220 (2d Cir. 2014) (citation modified) (citing *R.E. v. N.Y.C. of Educ.*, 694 F.3d 167, 174 (2d Cir. 2012)). However, the Second Circuit has clarified that such "testimony may be received that explains or justifies the services listed in the IEP." *R.E. v. N.Y.C. Dep't of Educ.*, 694 F.3d 167, 186 (2d Cir. 2012). Here, the school psychologist's testimony did exactly that when it "clarified the information" that was already explicitly provided for in the written IEP. *A.H. v. N.Y.C. Dep't of Educ.*, No. 24-CV-4828 (JGLC), 2025 WL 2773252, at *9 (S.D.N.Y. Sept. 29, 2025). Therefore, the SRO and IHO permissibly considered clarifying testimony that confirmed that the June 2020 IEP provided R.D. with the necessary assistive technologies and services.

Thus, the Court agrees with the detailed and well-supported conclusions of the IHO and SRO with regard to the June 2020 IEP. *See Rivas v. Banks*, No. 22-CV-10007 (LJL), 2023 WL 8188069, at *7 (S.D.N.Y. Nov. 27, 2023), *aff'd sub nom. Rivas v. Ramos*, No. 24-268, 2024 WL 5244849 (2d Cir. Dec. 30, 2024) (internal quotation marks omitted) (stating that when an IHO and SRO are in agreement, their "unanimity makes deference particularly apt"). Because the Court agrees that Defendants offered R.D. a FAPE for May 10, 2021 through June 10, 2021, the Court does not need to, and does not here, analyze the other *Burlington/Carter* prongs. *See M.C. v. Voluntown Bd. of Educ.*, 226 F.3d 60, 66 (2d Cir. 2000) ("If the challenged IEP was adequate, the state has satisfied its obligations under the IDEA and the necessary inquiry is at an end.").

### B. Plaintiff Is Entitled to Retroactive Tuition Reimbursement for the Period from June 11, 2021 to September 13, 2021

Unlike the June 9, 2020 IEP, the May 27, 2021 IEP failed to address R.D.'s needs and provide a FAPE for the period from June 11, 2021 through September 13, 2021. The Court considers each prong of the *Burlington-Carter* test in turn, finding that IHO Mazzei correctly concluded that they favor Plaintiff.

#### 1. The January 2020 CSP Did Not Provide R.D. a FAPE

The Court concludes that DOE's May 2021 proposed special education placement did not provide R.D. with a FAPE, and that the SRO's opposing conclusion is not entitled to deference. As found by IHO Mazzei, the proposed 12:1+(3:1) class was clearly inadequate and insufficiently supportive for R.D.'s needs. AR at 55–59.

IHO Mazzei noted that the prior school year recommendation was for a class size of 6:1+1, and characterized the change to the proposed class size 12:1+(3:1) as "stark" and "drastically different from the recommendations of all prior school years in evidence in this matter." AR at 55–56. Yet, IHO Mazzei determined that nothing in R.D.'s evaluative materials

obtained since the June 2020 CSE meeting "support[ed] a change in placement." *Id.* at 57; *see also id.* at 550–51 (reporting in the May 2021 IEP that in the preceding year, R.D. had overall "shown slow and inconsistent progress towards meeting her goals" and that R.D. "benefit[ed] from peer modeling and a small class size"). IHO Mazzei also noted that Plaintiff stated, at the time of the May 2021 IEP meeting, that she was "very concerned that a 12:1+(3[:]1) [was] too large to meet" R.D.'s needs. *Id.* at 56. Additionally, R.D. was previously placed in an 8:1:1 class at iBRAIN, but was moved to a 6:1:1 class at iBRAIN in order to "focus on building communication and cognitive skills in a more structured setting." *Id; see also id.* at 584 (stating in the May 2021 IEP that the 8:1:1 classroom placement at iBRAIN resulted in R.D. "becoming more dysregulated").

IHO Mazzei also considered testimony from the District's school psychologist and the iBRAIN director of special education. AR at 57–59. The school psychologist testified that the reason for the larger class size was R.D.'s speed and propensity for elopement. *Id.* at 57. However, IHO Mazzei noted that the record did not support this justification, and that the school psychologist referred to only one incident of R.D. eloping, for which R.D. was actually accompanied by an adult. *Id.* The school psychologist also testified that the larger class size would allow additional people to monitor R.D., in light of R.D.'s numerous seizures. *Id.* However, the IHO considered R.D.'s updated social history, which included that R.D. "cannot communicate when she may have a seizure approaching," and determined that nothing in R.D.'s record supported the change from the more intensive 6:1:1 class size to the 12:1+(3:1). *Id.* Furthermore, the iBRAIN director testified, based on her own observation of R.D.'s performance in different sized classrooms, that the larger class size was inappropriate for R.D. and would be academically, socially, and physically detrimental to R.D. *Id.* at 57–58.

Finally, IHO Mazzei determined that N.Y. Comp. Codes R. & Regs. tit. 8 § 200.6(h)(4)(ii)(a), which mandates that the class size for classes containing students with "highly intensive" needs not exceed six students, applied to R.D. AR at 58–59. N.Y. Comp. Codes R. & Regs. tit. 8 § 200.6(h)(4)(ii)(a) ("The maximum class size for special classes containing students whose management needs are determined to be highly intensive, and requiring a high degree of individualized attention and intervention, shall not exceed six students, with one or more supplementary school personnel assigned to each class during periods of instruction."); *see also* AR at 584 (stating in the May 2021 IEP that "[d]ue to the severity of [R.D.'s] impairments, she requires highly intensive interventions," "a more intensive adult:student ratio," and "more intensive specialized instruction to address her educational needs"). Therefore, IHO Mazzei ultimately found that the May 27, 2021 IEP's recommendation of a 12:1+(3:1) class size was inappropriate and denied R.D. a FAPE. *Id.* at 59.

However, SRO Krolak reversed this determination. AR at 35. SRO Krolak noted that the May 2021 IEP considered R.D.'s instructional and functional levels in detail, and based its class size determination on her needs. *Id.* at 31. After reviewing the District's school psychologist's testimony and the May 2021 IEP's consideration of R.D.'s "medical, physical, academic, and attending needs," SRO Krolak determined that the 12:1+(3:1) class size was sufficient. *Id.* at 33–34. Additionally, SRO Krolak also noted one other instance in the record that supports the concern that R.D. may elope. *Id.* at 33 (citing *id.* at 536 (stating in an email from Plaintiff, dated January 16, 2020, that R.D. requires "constant 1:1 adult support," because she is "partially ambulatory" and "risks injury and/or elopement" without supervision)).

SRO Krolak also acknowledged that Section 200.6(h)(4)(ii)(a) applies to R.D and a "6:1+1 special class placement was an appropriate placement" for R.D. AR at 34. Even though

19

SRO Krolak found that R.D. generally "exhibit[ed] highly intensive management needs and require[d] a high or significant degree of individualized attention and intervention," per N.Y. Comp. Codes R. & Regs. tit. 8, § 200.6(h)(4)(iii), SRO Krolak stated that "the IHO and [Plaintiff's] strict adherence to the language in the State regulation guiding 6:1+1 special class placements to the exclusion of other appropriate placement options is reductive and overlooks the evidence in the hearing record." *Id.* at 34. SRO Krolak also found that "the adult-to-student ratio required in a 6:1+1 special class and a 12:1(3:1) special class is similar." *Id.*

Lastly, SRO Krolak noted that N.Y. Comp. Codes R. & Regs. tit. 8, § 200.6(h)(4)(iii) allows that "[t]he maximum class size for those students with severe multiple disabilities, whose programs consist primarily of habilitation and treatment, shall not exceed 12 students." AR at 31. Without analyzing whether R.D. constituted a student "with severe multiple disabilities," as defined by the regulation, SRO Krolak stated that R.D. "may have also been appropriately placed in a program meeting the definition of a 12:1(3:1) consisting of habilitation and treatment." *Id.* at 34. Therefore, SRO Krolak determined that both a 6:1+1 and a 12:1+(3:1) class size were "appropriate" for R.D. *Id.*

Recently, arising from a case with very similar facts to here, the Second Circuit certified to the New York Court of Appeals the following question: "When a student is covered by more than one class size regulation under § 200.6(h)(4), do the varying restrictions serve as distinct requirements that must be independently fulfilled or as a list of class size options from which the DOE may pick?" *Cruz v. Banks*, 134 F.4th 687, 698–99 (2d Cir. 2025). On February 17, 2026, the New York Court of Appeals answered that § 200.6(h)(4) "sets forth a list of mutually exclusive alternatives, and that a [CSE] must therefore select the listed alternative that best meets a student's individual needs." *Cruz v. Banks*, No. 1, 2026 WL 436354, at *1 (N.Y. Feb. 17, 2026).

Therefore, based on the New York Court of Appeal's opinion, it appears that a CSE can legally choose either a 6:1+1 or a 12:1+(3:1) for a student that is covered by both Sections 200.6(h)(4)(ii)(a) and (iii), but the CSE still must choose the alternative that would best serve a student's needs.

Here, even assuming that both Sections 200.6(h)(4)(ii)(a) and (iii) apply to R.D.,[5] the Court concludes, for several reasons, that the SRO's decision is inadequately reasoned as to why a 12:1+(3:1) best serves R.D.'s needs. First, it is clear that the weight of the evidence in the record supports the conclusion that a 12:1+(3+1) ratio was inappropriate for R.D. Unlike in *Cruz*, IHO Mazzei determined that evaluations and reports, including a vocational assessment and social history, did not support the change to a 12:1+(3:1) ratio. AR at 55–59. Even SRO Krolak acknowledged that "the May 2021 IEP provided much of the same information as the June 2020 IEP," and that the May 2021 IEP reported that R.D. had "slow and inconsistent progress towards meeting her goals." *Id.* at 27–29. SRO Krolak also recited that the May 2021 IEP stated that R.D. "benefited from . . . a small class size." *Id.* at 28.

Additionally, R.D.'s history at iBRAIN, in needing to be moved from a 8:1:1 classroom to a smaller classroom, and the testimony of the iBRAIN director demonstrated that a 12:1+(3:1) class size would have been "totally" inappropriate for R.D., and "would negatively impact [R.D.'s] academic performance, social participation and development, and her physical well-being and her safety." AR at 56–57. Though the District's cited a risk of elopement to justify the larger class size, as IHO Mazzei determined, the record did not actually support that such a risk required placement in a 12:1+(3:1) special class. *Id.* at 57–59.

---

[5] The Court notes that neither the IHO nor the SRO explicitly concluded that R.D. has "severe multiple disabilities." Nonetheless, the Court concludes that is the case based on the nature of R.D.'s disabilities as set forth in the record.

21

Second, the SRO failed to grapple with testimony that showed the adverse impact of placing R.D. in a larger classroom. In discussing the class size recommendation, SRO Krolak largely recited the May 2021 IEP, AR at 30–33, and then relied on the school psychologist's testimony. *Id.* at 33. The SRO noted, but did not rebut, that R.D. had previously been moved from a larger class size from iBRAIN and that the iBRAIN director testified that larger class sizes heightened the risk of R.D.'s distractibility. *Id.* at 32–33. Additionally, the SRO did not address the iBRAIN director's testimony that the larger class size would negatively impact R.D.'s academic, social, and physical well-being, but rather concluded that generally, the May 2021 IEP "was reasonably calculated." *Id.* at 34. Without having fully confronted these considerations, the Court determines that SRO Krolak's decision regarding the larger class size recommendation was "insufficiently reasoned to merit deference." *C.F. ex rel. R.F. v. N.Y.C. Dep't of Educ.*, 746 F.3d 68, 77 (2d Cir. 2014); *see also F.O. v. N.Y.C. Dep't of Educ.*, 976 F. Supp. 2d 499, 513 (S.D.N.Y. 2013) (according no deference to a SRO, when the "SRO's opinion failed to consider thoroughly or carefully contrary testimony from witnesses present at the IHO hearing, even when that testimony was relied upon by the IHO").

Accordingly, the Court "consider[s] the IHO's analysis, which is also informed by greater educational expertise than that of judges," as is "entirely appropriate" when the Court finds the "SRO's conclusion unpersuasive even after appropriate deference is paid." *M.H. v. N.Y.C. Dep't of Educ.*, 685 F.3d 217, 246 (2d Cir. 2012). "[I]n situations when an SRO reverses the finding of an IHO, the court should give substantial deference to the SRO's views of educational policy, but less to the SRO's factual findings or to its reasoning in general." *Scott ex rel. C.S. v. N.Y.C. Dep't of Educ.*, 6 F. Supp. 3d 424, 441 (S.D.N.Y. 2014) (internal quotation marks omitted). Therefore, here, like in an earlier related case, *Ambrister v. N.Y.C. Dep't of Educ.*, the Court agrees with the

IHO's factual finding and reasoning, after according the SRO's decision with due weight, in determining that a CSP did not provide R.D. a FAPE, because "the proposed 12:1+(3:1) class was clearly inadequate and insufficiently supportive for R.D.'s needs." No. 22-CV-5516 (JGLC), 2024 WL 3888743, at *8–*9 (S.D.N.Y. Aug. 20, 2024). Therefore, the Court determines that the 12:1+(3:1) class size recommendation denied R.D. a FAPE.

### 2. The IHO Did Not Err in Finding iBRAIN an Appropriate Placement

SRO Krolak did not reach the second or third prongs of the *Burlington-Carter* test. *See* AR at 34. Defendants do not substantively contest that iBRAIN was an appropriate placement for R.D. *See* ECF No. 18-1 at 14; ECF No. 26 at 6. Therefore, for the reasons set forth in IHO Mazzei's decision, the Court agrees that the record supports that R.D.'s placement at iBRAIN was appropriate for the period for the partial 2021-2022 school year. AR at 64–66.

### 3. The Balancing of Equities Favors Plaintiff

Equitable considerations under the third prong of the *Burlington-Carter* test include "the reasonableness of the action taken by the parents[.]" *L.K. v. N.Y.C. Dep't of Educ.*, 674 F. App'x 100, 100 (2d Cir. 2017) (quoting *Frank G. v. Bd. of Educ. of Hyde Park*, 459 F.3d 356, 363–64 (2d Cir. 2006)). Courts should also consider "the parties' compliance or noncompliance with state and federal regulations pending review." *J.L. v. N.Y.C. Dep't of Educ.*, No. 15-CV-1200 (CBA), 2016 WL 6902137, at *8 (E.D.N.Y. Nov. 22, 2016) (internal citation omitted). "Important to the equitable consideration is whether the parents obstructed or were uncooperative in the school district's efforts to meet its obligations under the IDEA." *C.L. v. Scarsdale Union Free Sch. Dist.*, 744 F.3d 826, 840 (2d Cir. 2014) (internal citation omitted).

IHO Mazzei determined that although equitable considerations in this case "are not straight forward," they did not warrant "reduc[ing] tuition on an equitable basis." AR at 67–68.

The Court agrees. IHO Mazzei noted that Plaintiff failed to appear at an impartial hearing before her, in contravention of an executed subpoena requiring Plaintiff's appearance. *Id.* at 67. However, the IHO weighed this against other instances of Plaintiff's compliance, including by providing the June 23, 2021 ten-day notice to DOE and participating in the CSE meeting. *Id.* at 67–68; *see also* 20 U.S.C. § 1412(a)(10)(C)(iii) (establishing that "[t]he cost of reimbursement . . . may be reduced or denied" if the parent fails to notify the school district of his or her intent to enroll the student in a private school, fails to make the child available for evaluation, or otherwise acts unreasonably).

Furthermore, the IHO determined that though it seemed particularly "implausible" that "there was ever an intention for [R.D.] to attend public schools in New York City, at least for the first year of [R.D.'s] presence in New York City," this was not an issue for the relevant time period here, which was several years after R.D.'s 2019 arrival. AR at 67. Additionally, the IHO noted that Plaintiff had signed a 2021–2022 enrollment contract with iBRAIN, which indicated an obligation to pay should Plaintiff not prevail in the administrative proceedings. *Id.* Therefore, the Court determines that because of Plaintiff's overall compliance with the administrative process, the equitable considerations here do not require a reduction of tuition. *See C.L.*, 744 F.3d at 840 (internal citation omitted) ("As the IHO noted, the parents cooperated with the District in its efforts to meet its obligations under the IDEA. Hence, their pursuit of a private placement was not a basis for denying their tuition reimbursement, even assuming, as the District contended before the IHO, that the parents never intended to keep [the student] in public school[.]"). Therefore, IHO Mazzei properly did not reduce tuition on an equitable basis. AR at 68.

IHO Mazzei correctly concluded that each of the *Burlington-Carter* factors favor Plaintiff. The Court finds that Plaintiff is entitled to reimbursement for the cost of R.D.'s

24

enrollment at iBRAIN for the period from June 11, 2021 to September 13, 2021. In all other respects, Plaintiff's motion for summary judgment is denied.

## CONCLUSION

For the reasons set forth herein, Defendants' motion for summary judgment is GRANTED in part and DENIED in part. Plaintiff's motion seeking retroactive reimbursement for R.D.'s enrollment at iBRAIN is GRANTED in part and DENIED in part. Defendants are ordered to fund R.D.'s placement at iBRAIN for the period from June 11, 2021 to September 13, 2021. Plaintiff's motion for summary judgment is DENIED in all other respects.

As the rulings in this Order resolve all the parties' disputes, the parties shall confer and, no later than **April 10, 2026**, shall jointly propose a deadline by which they are prepared to file a proposed judgment consistent with this Order. In that joint submission, Plaintiff shall further advise whether she intends to move for attorneys' fees in this action.

The Clerk of Court is directed to terminate ECF Nos. 18 and 23.

Dated:  March 10, 2026
       White Plains, New York

SO ORDERED.

JESSICA G. L. CLARKE
United States District Judge

25